# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| LORENZO KYLE HAMPTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )   Case No.: 6:22-cv-1226-JHE |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Lorenzo Kyle Hampton, acting through counsel, seeks review pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act ("Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying an application for supplemental security income ("SSI").  (Doc. 1)[1].  The Commissioner has filed an answer that includes the administrative record.  (Doc. 9).  The parties have consented to an exercise of plenary jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Doc. 11).  Each side has filed a brief setting out their respective positions on the Commissioner's decision (Doc. 12, Plaintiff's Brief ("Pl. Brief"); Doc. 13, Commissioner's Brief ("Comm'r Brief")), and Plaintiff has also filed a reply brief.  (Doc. 14, Plaintiff's Reply ("Pl. Reply")).  For the reasons stated below, the Commissioner's decision is due to be affirmed.

---

[1] References to "Doc(s) ___" are to the document number(s) of the pleadings, motions, orders, exhibits, and other materials in the court file, as compiled and enumerated on the docket sheet by the Clerk.

## I. Procedural History

On April 2, 2019, Plaintiff applied for SSI under Title XVI of the Act, with a protective filing date of October 1, 1998. (*See* Tr. 65-66, 318, 343)[2]. His claim was denied at the initial level. (Tr. 124-49). Plaintiff was granted a hearing before an Administrative Law Judge ("ALJ") on September 9, 2021, at which Plaintiff was represented by his current legal counsel. (Tr. 60-89). Plaintiff stipulated at the hearing to an amended alleged onset date corresponding to the date of his protective filing. (Tr. 65-66). After that hearing, Plaintiff received updated medical records and was granted a supplemental hearing before the ALJ, held on February 3, 2022. (Tr. 41-59). On February 15, 2022, the ALJ issued a decision finding that Plaintiff was not disabled and thus not entitled to SSI. (Tr. 12-34). The Appeals Council denied review. (Tr. 1-6). Plaintiff filed this civil action on September 20, 2022. (Doc. 1).

## II. Standard of Review

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*; *see*

---

[2] References to "Tr. __" are to the page(s) of the administrative transcript, found in Doc. 9-3 (Tr. 1-89), Doc. 9-4 (Tr. 90-149), Doc. 9-5 (Tr. 150-237), Doc. 9-6 (Tr. 238-315), Doc. 9-7 (Tr. 316-342), Doc. 9-8 (Tr. 343-442), Doc. 9-9 (Tr. 443-658); Doc. 9-10 (Tr. 659-742), Doc. 9-11 (Tr. 743-797), Doc. 9-12 (Tr. 798-805), Doc. 9-13 (Tr. 806-812), Doc. 9-14 (Tr. 813-819), and Doc. 9-15 (Tr. 820-902). *See also* Doc. 9-2, which contains an index of items in the administrative transcript.

*also Biestek v. Berryhill*, 587 U.S. ___, ___, 139 S. Ct. 1148, 1154 (2019).

"Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for benefits and establish entitlement for a period of disability, a claimant must be disabled as defined by the Act and its implementing regulations. The regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To establish entitlement to SSI, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921(a) .

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is engaged in substantial gainful activity

    (2) whether the claimant has a severe impairment;

    (3)  whether the claimant's impairment meets or equals an impairment listed by the SSA;

    (4) whether the claimant can perform his or her past work; and

    (5) whether the claimant is capable of performing any work in the national economy.

*Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1312 (11th Cir. 2021).  If a claimant satisfies Steps One and Two, he or she is automatically found disabled if he or she suffers from a listed impairment.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  "Once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform."  *Id.* (cleaned up).

## IV. The ALJ's Decision

The ALJ applied the sequential evaluation set out in the regulations as follows:  At Step One, she found that Plaintiff has never engaged in substantial gainful activity.  (Tr. 19).  At Step Two, the ALJ found Plaintiff has the following severe impairments: persistent depressive disorder, attention-deficit hyperactivity disorder ("ADHD"), anxiety with depression, adjustment disorder, dysthymic disorder, and seizure disorder.  (Tr. 19).  At Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment.  (Tr. 20).

Before proceeding to Step Four, the ALJ determined Plaintiff's residual functional capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 416.945(a)(1).  The ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels but with a number of non-exertional limitations, namely that he: (1) can understand, remember, and carry out simple instructions and make simple work related decisions;

4

(2) can work at a consistent pace throughout the workday but not at a production rate pace where tasks must be performed quickly; (3) can tolerate occasional interaction with coworkers, supervisors, and the public; and (4) can tolerate occasional changes in work setting; but (5) cannot work around hazards such as unprotected heights, dangerous machinery, or large, open bodies of water. (Tr. 23-31). The ALJ recognized at Step Four Plaintiff has no past relevant work. (Tr. 32). At Step Five, the ALJ found, however, based on hearing testimony from a vocational expert, that, given Plaintiff's age (20 years old at the time of his application) and education (high school graduate, some college), he could perform other work that exists in significant numbers in the national economy, including laundry worker, cleaner, and garment sorter. (Tr. 33, *see also* Tr. 84-85). Therefore, the ALJ determined on behalf of the Commissioner that Plaintiff was not disabled within the meaning of the Act. (Tr. 33).

## V. Analysis

Plaintiff challenges the Commissioner's decision on what Plaintiff identifies as two grounds. His primary argument, encompassing almost all his brief, is that the ALJ improperly rejected the opinions of multiple mental health professionals, specifically as they relate to how often Plaintiff's mental impairments would be expected to cause him to miss work. (Pl. Brief at 3-17). Plaintiff's secondary argument is that the "ALJ failed to fully and fairly develop the record," claiming that she "did nothing to ascertain the truth of the severity of [Plaintiff's] mental impairments." (Pl. Brief at 18-19). These claims are addressed in turn.

### A. Discounting Opinions Regarding Absenteeism and Other Limitations Due to Mental Impairments

Plaintiff argues that, in determining his RFC, the ALJ erred in rejecting or discounting medical source opinions, especially those related to how often Plaintiff's mental impairments might be expected to cause him to miss work. First, Plaintiff relies on an opinion by Dr. Robert

5

Estock, a psychiatrist who reviewed Plaintiff's medical records on behalf of the State Disability Determination Service. (Pl. Brief at 6-9). The ALJ actually found his opinions "partially persuasive" and credited most of them as "partially consistent with the [other] evidence of record." (Tr. 28-29). However, the ALJ rejected Dr. Estock's opinion predicting that Plaintiff "would miss 1 to 2 days a month due to symptoms." (Tr. 28-29; *see* Tr. 146). Next, Plaintiff cites Ashly Pruitt, a therapist at the Northwest Alabama Mental Health Center ("NWAMHC"). (Pl. Brief at 9-10; *see* also Tr. 75). On a two-page questionnaire addressing Plaintiff's ability to perform work-related activities, Pruitt indicated she would anticipate that Plaintiff's impairments and treatment would cause him to be absent from work more than four days per month. (Tr. 866). She also indicated that Plaintiff's ability to "[c]arry out very short and simple instructions" and to "[m]aintain regular attendance and be punctual within customary, usually strict tolerances" both would be "seriously limited, but not precluded." (Tr. 865). The questionnaire defined "[s]eriously limited, but not precluded" as meaning that "[t]here will likely be days when your patient can effectively perform this activity, and other days (probably 3 or more days per month on average) when your patient will not be able to persist with this activity for at least 3/4 of a full work day." (Tr. 865). In addition, Plaintiff relies on a brief written statement signed by a treating physician, Dr. Keith E. McCoy (Pl. Brief at 10), who recited that he reviewed the questionnaire completed by Pruitt and that he found her responses to be "consistent with [his] own observation and clinical judgment about [Plaintiff]." (Tr. 867). Finally, Plaintiff references Angela Glasgow, a certified nurse practitioner who, like Pruitt, saw Plaintiff at the NWAMHC and completed the same questionnaire, with checkbox responses that exactly mirrored Pruitt's, including that Plaintiff would likely miss more than four days of work per month. (Tr. 900-01).

The ALJ rejected these opinions, however, and instead implicitly found that Plaintiff would

6

miss no more than one day of work per month because of his impairments.  (*See* Tr. 28-30).  That finding is consequential because the vocational expert testified that, if Plaintiff could be expected to miss any more than that, it would foreclose all competitive work.  (Tr. 85-86).  Plaintiff argues that the ALJ's rejection of these opinions is neither (1) sufficiently explained nor (2) supported by substantial evidence.  The undersigned disagrees, as further explained below.

"For claims filed ... on or after March 27, 2017," an ALJ must "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a); *see also Cole v. Commissioner, Soc. Sec. Admin.*, 2023 WL 21287, at *5 (11th Cir. Jan. 3, 2023); *Harner v. Social Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022) (discussing 20 C.F.R. § 404.1520c, the parallel regulation to 20 C.F.R. § 416.920c that applies to claims for disability insurance benefits under Title II of the Act).  The regulations provide several factors for determining what weight to give medical opinions.  Those factors include: (1) the supportability of the opinion, (2) its consistency with other record evidence, (3) the physician's relationship with the claimant, (4) the physician's specialty, and (5) other relevant information, such as the physician's familiarity with the other record evidence and with making a claim for disability. 20 C.F.R. § 416.920c(c)(1)-(5).  Supportability and consistency are the "most important factors," and the ALJ must articulate how they were considered in assessing the opinions of a medical source.   20 C.F.R. §§ 416.920c(a), (b)(2).

The ALJ relied upon essentially the same explanations and evidence in rejecting the relevant opinions of Estock, Pruitt, McCoy, and Glasgow, including specifically to the extent they predicted that Plaintiff should be expected to miss more than one day of work per month due to psychological symptoms.  (*See* Tr. 28-31; *see also* Tr. 25-27 (discussing evidence in assessing

Plaintiff's RFC more broadly); Pl. Brief at 11 ("The ALJ rejected the opinions of therapist Pruitt, Dr. McCoy, and nurse Glasgow with the same failed rationale as she provided in rejecting Dr. Estock's opinion …").  At the outset, Plaintiff claims that the ALJ did not adequately explain why she discounted Dr. Estock's opinion.  It should be noted, however, that Dr. Estock did not himself explain the basis for his belief in the first place, and he is not an examining medical source.  Both considerations support the ALJ's decision to discount his opinion.  *See Hand v. Soc. Sec. Admin., Comm'r*, 786 F. App'x 220, 225 (11th Cir. 2019) (affirming ALJ decision to discount as not sufficiently explained or supported Dr. Estock's prediction that claimant would miss 1-2 days of work per month because of psychological symptoms); *Reynolds v. Comm'r, Soc. Sec. Admin.*, 2023 WL 401356, at *3 (N.D. Ala. Jan. 25, 2023) (same); *Harris v. Soc. Sec. Admin., Comm'r*, 2022 WL 4110904, at *12 (N.D. Ala. Sept. 8, 2022) (same); *Williams v. Kijakazi*, 2022 WL 4087509, at *4 (N.D. Ala. Sept. 6, 2022) (same); *Williams v. Comm'r of Soc. Sec. Admin.*, 2018 WL 4344472, at *4 (N.D. Ala. Sept. 11, 2018) (same); *Twilley v. Berryhill*, 2017 WL 4304988, at *4–5 (N.D. Ala. Sept. 28, 2017) (same); *Pannell v. Berryhill*, 2019 WL 296730, at *5 (N.D. Ala. Jan. 23, 2019) (same); *Prince v. Colvin*, 2013 WL 754859, at *7 (N.D. Ala. Feb. 27, 2013) (same); 20 C.F.R. § 416.920c(c)(3)(v) ("A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.");

Further, the ALJ explained that she had considered Dr. Estock's absenteeism prediction and the opinions of Pruitt, Glasgow, and Dr. McCoy to be unsupported by their own findings and inconsistent with the record evidence otherwise.  (Tr. 28-31).  In particular, the ALJ cited that, despite reporting and exhibiting mild to moderate depression and anxiety, Plaintiff's records showed only conservative mental health treatment with "routine follow up visits for medication

8

refills and therapy" and no "emergency department visits or inpatient care for exacerbation of psychiatric symptoms." (Tr. 25-26). The ALJ further noted that when Plaintiff was seen by various medical practitioners, he was deemed to present with normal and appropriate mental status, appearance, speech, orientation, mood, affect, thought process, and memory; no signs of aggressive behavior during the visits; with fair insight and judgment; denying hallucinations, delusions, and suicidal and homicidal ideations; and claiming to know his strengths and that he could be independent. (*See* Tr. 26-27, 29, 30-31 (citing Tr. 454, 457, 460, 535, 537, 538, 542, 546, 549, 575, 579, 582, 585, 588, 592, 619, 641-645, 664, 674, 679, 730, 825, 832, 841, 849, 882, 888, 891)).

Plaintiff does not dispute the existence of such "relatively ordinary" (Pl. Brief at 8-9) and "seemingly normal" (*id.* at 11) findings. But he nevertheless argues that the ALJ could not reasonably rely on them in rejecting and discounting the relevant opinions of Estock, McCoy, Pruitt, and Glasgow. In support, Plaintiff cites *Marshall v. Commissioner of Soc. Sec.*, 2022 WL 4538453 (N.D. Ala. Sept. 28, 2022). (Pl. Brief at 8-9). In that case, the undersigned held that the ALJ had improperly discounted the opinion of a consulting psychologist regarding the severity of the claimant's diminished intellectual function, in reliance upon normal mental status findings generally (1) by the consulting psychologist himself and (2) by a primary care physician who saw the claimant several times for distinctly physiological complaints, including hypertension, back pain, and allergies. *See Marshall*, at *3-4, 6-7. In so doing, the undersigned reasoned that the observations about the claimant's mental status did not sufficiently bear on the claimant's specific impairment, *i.e.*, diminished intellectual function, especially as it related to the primary care physician, who was not a mental health specialist and was examining the claimant for the purpose of assessing distinctly physiological problems. *See id.*; *see also Simon v. Commissioner, Soc. Sec.*

9

*Admin.*, 7 F.4th 1094, 1108 n. 7 (11th Cir. 2021), *superseded by regulation on other grounds as stated in Glover v. Comm'r, Soc. Sec. Admin.*, 2022 WL 17826364, at *3 n. 2 (11th Cir. Dec. 21, 2022); *Cash v. Comm'r of Soc. Sec.*, 2021 WL 1117754, at *7 (N.D. Ala. Mar. 24, 2021); *see also* 20 C.F.R. § 416.920c(c)(4) (providing that the opinion of a medical specialist within their specialty may be more persuasive than the opinion of a non-specialist in the area). In the present case, however, the undersigned concludes that the content, consistency, and number of the "normal" and "appropriate" mental health status observations cited by the ALJ have greater probative value towards supporting that Plaintiff's particular impairments, clinical depression and anxiety, have been well-managed with conservative treatment and have not manifested in acute symptoms. As such, the ALJ could reasonably rely on such findings in discounting Dr. Estock's absenteeism prediction. *See Nardelli v. Comm'r of Soc. Sec.*, 2024 WL 565383, at *5 (11th Cir. Feb. 13, 2024) (holding that substantial evidence supported ALJ's finding that claimant was not disabled based on mental impairments, including evidence showing that the claimant "largely performed within the range of normal outcomes on mental-status exams and presented in a good mood with normal affect[,] … displayed fair social skills, demonstrated adequate judgment and insight, and appeared to have coherent and logical thought processes."); *Caldwell v. Barnhart*, 261 F. App'x 188, 191–92 (11th Cir. 2008) (holding that ALJ was entitled to reject medical opinions regarding the severity of mental health impairments on the ground that such assessments were inconsistent with providers own treatment notes documenting that claimant's "mental status was 'normal' and 'appropriate,' and that she consistently experienced no acute symptoms," that her "mental health status was 'well maintained,'" and that her "memory, attention span, and impulse control were good").

The ALJ also highlighted that, in early February 2022, the same month she issued her decision, Plaintiff was first seen at Vernon Medical Center by a nurse practitioner, Amber

Pennington. (Tr. 26, 29, 31 (citing Tr. 894)). The ALJ remarked that the progress notes from that visit reflected that Plaintiff had denied symptoms such as anxiety, crying spells, isolation, fatigue, feelings of worthlessness, problems concentrating, or sleep or appetite disturbance. (*Id.* (citing Tr. 894)). Plaintiff insists, though, that Pennington's notes actually support rather than detract from the relevant opinions of Estock, McCoy, Pruitt, and Glasgow because Pennington also deemed Plaintiff to have "poor insight" and exhibit an "anxious and depressed" "mental state." (Pl. Brief at 9 (*citing* Tr. 894)). However, the ALJ expressly acknowledged those findings (Tr. 27, 30, 32), which are not otherwise explicated, and she nevertheless considered Pennington's findings overall to acknowledge that Plaintiff had reported no active symptoms, that he was able to maintain relationships, and that his depression and anxiety were not interfering with his activities of daily living. (Tr. 27, 28, 29 (*citing* Tr. 894)). That interpretation is reasonably supported. *Kitzero v. Berryhill*, 2018 WL 2288006, at *7 (N.D. Ala. May 18, 2018) ("Claimant may interpret some of the record evidence differently from the ALJ, and a different ALJ may also have interpreted the evidence differently. Even so, the relevant consideration is not whether the ALJ offered the best possible explanation or interpretation of the evidence, but whether the ALJ's consideration of the evidence was supported by substantial evidence.").

Finally, the ALJ also explained that she found Plaintiff's activities support that he was not limited by his depression or other mental impairments to the extent suggested by Dr. Estock's absenteeism opinion or by Pruitt, McCoy, and Glasgow. (*See* Tr. 27, 30). The ALJ noted that such activities included that Plaintiff obtained a regular high school diploma and attended community college for about two years, (25, 30; 68-69); attended basic life skills classes five hours per day, five times per week before the pandemic and three days per week since (Tr. 25, 27, 30, 79); he is able to manage his personal care needs without problems, prepare simple meals, watch

11

videos to learn about cooking, use a computer, play video games, take out the trash, straighten his room, do laundry, care for pets, and help care for his young nephew, count change, watch sports on television, attend medical appointments, and follow simple instructions.  (*See* Tr. 25, 27,  30, 66, 67, 80-83).

Plaintiff takes issue with the ALJ's characterizations of a few of these activities as incomplete or otherwise misleading.  (Pl. Brief at 11-14).  First, Plaintiff highlights that, while the ALJ found he can "prepare simple meals," his hearing testimony was actually that he can only "microwave cook" and "put stuff in the oven like I've made fries and stuff like that," while he was still trying to "figure out" things "like when cooking something on the stove, ... like a hamburger and you've got to make sure both sides are brown."  (Pl. Brief at 12 (quoting Tr. 81-82)).  Plaintiff likewise says that although the ALJ found he can "use a computer" and "play video games," his hearing testimony was that he "can't be around [computers] for a long time" and that he only plays video games for "about 20 minutes."  (Pl. Brief at 12 (quoting Tr. 80)).  Finally, Plaintiff emphasizes that while the ALJ found he "helps care for his nephew," his hearing testimony was only that he helps "babysit" with his nephew by "spending time" with him and "fix[ing him] a bottle … or something to eat," but he further clarified that the child's mother is also present.  (Pl. Brief at 12 (*citing* Tr. 82-83)).

It might be assumed that some of the above points may be somewhat colorable as far as they go.  Despite that, Plaintiff's argument still ultimately amounts to parsing and quibbling around the edges of the ALJ's broader finding that, on the whole, Plaintiff's activities tend to support that his mental impairments do not result in acute symptoms or limitations that substantially interfere with his activities of daily living or that would cause one to expect that he would have a problem with excessive absenteeism.  *See Long v. Kijakazi*, 2022 WL 4588581, at *10 n. 14 (S.D. Ala.

12

Sept. 29, 2022) ("Long also quibbles with how the ALJ weighed some of her reported activities of daily living, but she fails to convince the undersigned that this amounts to anything more than inviting the Court to impermissibly reweigh the evidence or substitute its judgment for the ALJ's.").

Based on the foregoing, the undersigned concludes that the ALJ's decision to discount or reject the relevant opinions of Estock, Pruitt, McCoy, and Glasgow, including specifically insofar as they predict that Plaintiff should be expected to miss more than one day of work per month due to his mental impairments, is supported by substantial evidence. Therefore, Plaintiff's first claim is due to be rejected.

### B. Development of a Full and Fair Record

Plaintiff raises one other claim: the ALJ allegedly failed to develop a full and fair record. (Pl. Brief at 18-19). At the administrative level, Social Security proceedings are inquisitorial rather than adversarial in nature. *See Carr v. Saul*, 593 U.S. 83, 89-90 (2021) (*citing Sims v. Apfel*, 530 U.S. 103, 110-11 (2000)); 20 C.F.R. § 416.1400(b). The ALJ, acting on behalf of the Commissioner, thus has an obligation to develop a full and fair record as it might pertain to all circumstances in favor of and against the claim for disability. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018). "However, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (citing *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995)). In this inquiry, the court is "guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Id.* (*quoting Brown, supra*).

Plaintiff's only substantive argument in support of this claim in his brief, however, is a

conclusory assertion that the ALJ "made up [Plaintiff's] RFC out of whole cloth," having "simply determined that she did not believe [Plaintiff] and did not believe the unrefuted statements from the mental health professionals about how his mental impairments would affect his absenteeism." (Pl. Brief at 19). As the Commissioner points out, however, Plaintiff failed to identify any specific action the ALJ was supposedly obligated to take or just what necessary information was supposedly missing from the record. (Comm'r Brief at 21). In his reply, Plaintiff tries to answer this by suggesting that the ALJ could have done "*anything* … and it would have been better than what she did." (Pl. Reply at 8 (emphasis original). Plaintiff generally offers, for example, that the ALJ could have called a medical expert to testify at the hearing, ordered a consultative examination, or recontacted Plaintiff's mental health providers "to seek clarification or to resolve perceived inconsistencies." (*Id.*)

      The undersigned does not find that to be much of a retort, however. Additional evidence could potentially be gathered in literally every single Social Security case, and, to be sure, the ALJ generally has the discretionary authority to seek it. But that's not strictly the issue. Rather, the ALJ is only required to develop the record as necessary to afford a reasonable, informed basis upon which to evaluate the claim of disability and make the findings required to resolve it. *See Graham supra.* Thus, the ALJ need not as a rule take any of the additional actions that Plaintiff proposes provided the record is otherwise sufficient from which to make a disability determination. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." (*citing Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (citation omitted)); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999)

("[The record, which included the opinions of several physicians including that of Dr. Cameron Tebbi who treated Anastasia, was sufficient for a decision and additional expert testimony was unnecessary."); *Land v. Comm'r of Soc. Sec.*, 843 F. App'x 153, 156 (11th Cir. 2021) (ALJ was not required to call a medical advisor to appear at hearing "because the record included several years of medical evidence documenting Land's impairments and treatment"); *Prince v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 967, 972 (11th Cir. 2014) (holding that ALJ was not required to call an independent medical expert or to re-contact the claimant's treating physicians about their RFC opinions "because the record was sufficient to determine whether [the claimant] was disabled").

To that end, the administrative record in this case spans over 900 pages. As indicated by the citations in the ALJ's written decision, it includes voluminous progress notes and other records from Plaintiff's numerous visits to a host of medical providers, including mental health professionals, both before and during his alleged period of disability, as well as from state agency reviewing physicians. The ALJ granted Plaintiff not one but two hearings and assisted Plaintiff in obtaining additional outstanding medical records Plaintiff claimed were necessary to his case. (*See* Tr. 48-59, 71). Because Plaintiff has not demonstrated evidentiary gaps that resulted in unfairness or clear prejudice, his claim that the ALJ failed to sufficiently develop the administrative record is due to be rejected.

## VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, the undersigned concludes that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and supplemental security income is due to be **AFFIRMED.** A separate Final Order will be entered.

DONE this 27th day of March, 2024.

                                        **JOHN H. ENGLAND, III**
                                        UNITED STATES MAGISTRATE JUDGE